# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>KRISTINE A KERR | **Case Number: 26SL-CC04368** | |
| Plaintiff/Petitioner:<br>SAINT LOUIS COUNTY<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>SEAN MICHAEL ELAM<br>101 SOUTH HANLEY<br>SUITE 1280<br>ST. LOUIS, MO 63105 | |
| Defendant/Respondent:<br>LEXINGTON INSURANCE COMPANY | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Breach of Contract | | (Date File Stamp for Return) |

**The State of Missouri to:** **SCOTTSDALE INSURANCE COMPANY**
**Alias:**
**301 W. HIGH STREET**
**ROOM 530**
**SERVE: ANGELA NELSON**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

17-JUL-2026 — Date

/S/ MALIK WRIGHT-HAMILTON — Clerk

**Further Information:**
MWH

**EXHIBIT A**

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________________________.

Served at ______________________________________________ (address)
in ______________________________ (County/City of St. Louis), MO, on ____________________ (date)
at ______________ (time).

______________________________ Printed Name of Officer or Server

______________________________ Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ____________________ Date ______________________________ Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

## THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**<u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

26SL-CC04368

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

**IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS**
**STATE OF MISSOURI**

ST. LOUIS COUNTY, )
)
)
Plaintiff, )
)
v. ) Case Number:
)
LEXINGTON INSURANCE COMPANY, )
**Serve: Angela Nelson** )
Director, )
Missouri Department of )
Commerce and Insurance )
Harry S. Truman Office )
Building )
301 W. High Street )
Room 530 )
Jefferson City, MO 65101 )
)
INSURANCE COMPANY OF THE )
STATE OF PENNSYLVANIA, )
**Serve: Angela Nelson** )
Director, )
Missouri Department of )
Commerce and Insurance )
Harry S. Truman Office )
Building )
301 W. High Street )
Room 530 )
Jefferson City, MO 65101 )
)
STARR INDEMNITY & LIABILITY )
COMPANY, )
**Serve: Angela Nelson** )
Director, )
Missouri Department of )
Commerce and Insurance )
Harry S. Truman Office )
Building )
301 W. High Street )
Room 530 )
Jefferson City, MO 65101 )
)
SCOTTSDALE INSURANCE COMPANY, )

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

**Serve: Angela Nelson** )
Director, )
Missouri Department of )
Commerce and Insurance )
Harry S. Truman Office )
Building )
301 W. High Street )
Room 530 )
Jefferson City, MO 65101 )
)
ALLIED WORLD INSURANCE )
COMPANY, )
**Serve: Angela Nelson** )
Director, )
Missouri Department of )
Commerce and Insurance )
Harry S. Truman Office )
Building )
301 W. High Street )
Room 530 )
Jefferson City, MO 65101 )
)
VANTAPRO SPECIALTY INSURANCE )
COMPANY, )
**Serve: Angela Nelson** )
Director, )
Missouri Department of )
Commerce and Insurance )
Harry S. Truman Office )
Building )
301 W. High Street )
Room 530 )
Jefferson City, MO 65101 )
)
GEMINI INSURANCE COMPANY )
**Serve: Angela Nelson** )
Director, )
Missouri Department of )
Commerce and Insurance )
Harry S. Truman Office )
Building )
301 W. High Street )
Room 530 )
Jefferson City, MO 65101 )
)
Defendants. )

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

**PETITION**

COMES NOW Plaintiff St. Louis County and states for its Petition as follows:

**Background**

1. This is an action for declaratory relief pursuant to § 527.010, et seq., Rule 87.01, et seq., and for breaches of insurance policy contracts ("Claims for Relief"). All the Claims for Relief relate to the alleged wrongful prosecution, conviction and imprisonment of Lawrence Callanan ("Callanan") of murder in St. Louis County Circuit Court in 1996. On May 30, 2020, the Supreme Court of Missouri entered an Order setting aside Callanan's conviction, resulting in his release from prison a few days later; in its Order, the Supreme Court granted Callanan's request for habeas corpus relief, based, in substantial part, upon a finding of misconduct attributable to the lead prosecutor. See *State ex rel. Callanan v Griffith*, No. SC95443 (Mo. May 29, 2020). At all relevant times, the lead prosecutor was acting in the course and scope of his employment by Plaintiff St. Louis County ("STLCO").

2. Soon after Mr. Callanan's release, he hired counsel. Ultimately, that lawyer made demand against SLCO for payment of a substantial sum of money to compensate him for the injuries he suffered by virtue of his unlawful conviction and ensuant imprisonment for twenty-four-plus years ("Alleged Injury Period").

**Parties**

3. Plaintiff STLCO is a political subdivision of the State of Missouri and a constitutional charter county that exists pursuant to Art. § 18 (a) of the Missouri Constitution.

4. Defendant Scottsdale Insurance ("Scottsdale") is a foreign insurance company authorized to do business in Missouri.

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

5. Defendant Starr Indemnity and Liability Company ("Starr") is a foreign insurance company authorized to do business in Missouri.

6. Defendant Allied World Insurance Company ("Allied World") is a foreign insurance company authorized to do business in Missouri.

7. Defendant The Insurance Company of the State of Pennsylvania ("Pennslyvania") is a foreign insurance company authorized to do business in Missouri.

8. Defendant Lexington Insurance Company ("Lexington") is a foreign insurance company authorized to do business in Missouri.

9. Defendant Vantapro Specialty Insurance Company ("Vantapro") is a foreign insurance company.

10. Gemini Insurance Company ("Gemini") is a foreign insurance company. (The Defendants shall be referenced hereinafter collectively as "Defendant Insurers").

**Venue**

11. Venue is appropriate in this Court pursuant to § 508.010.4, RSMo, in that STLCO was first injured by Defendants' actions in St. Louis County, Missouri.

**General Allegations**

12. Lawrence Callanan was convicted of murder in St. Louis County Circuit Court in 1996. He was sentenced to life in prison (plus 30 years).

13. On May 29, 2020, after Mr. Callanan had been imprisoned for more than twenty-four years, the Supreme Court of Missouri entered its Order setting aside his conviction, and he was released from prison a few days later. See *State ex rel. Callanan v Griffith*, No. SC95443 (Mo. May 29, 2020).

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

14. The set-aside order was based on an alleged wrongful prosecution involving violations of various fundamental civil and legal rights that Mr. Callanan enjoyed, amounting to prosecutorial misconduct. Id. The State declined to re-try Callanan.

15. Through counsel, Mr. Callanan contacted STLCO thereafter asserting that Callanan was legally entitled to financial compensation for personal and bodily injuries he suffered over the continuous course of his incarceration as a result of the alleged acts and omissions committed by STLCO, its agents and employees, that led to Callanan's incarceration ("Callanan Claims").

16. Among other things, the Callanan Claims sounded in officials' and employees' deliberate indifference to, and wanton and reckless violations of Callanan's legal and civil rights, including negligent infliction of emotional distress, failure to train and supervise, and failure to implement adequate safeguarding polices, regulations, customs, practice and discipline concerning the conduct of prosecuting attorneys.

17. Callanan demanded that STLCO pay Mr. Callanan financial compensation for the personal and bodily injuries he contended he suffered over a continuous course of his incarceration

18. In exchange for premiums paid by STLCO, the Defendant Insurers collectively provided continuous coverage to STLCO from January 1, 1998 though the day of Callanan's release from prison. During this time, Callanan alleged that he suffered every day, constituting serial injuries spanning a period of time exceeding twenty-four years.

19. STLCO gave timely individual written notice of the Callanan Claims to all the Defendant Insurers.

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

20. Prior to Callanan filing suit against STLCO, STLCO and Callanan agreed to participate in mediation in an attempt to resolve the Callanan Claims without litigation.

21. A mediation of the Callanan Claims was initially scheduled for June 9, 2021, but that mediation was postponed to enable, among other things, the Defendant Insurers additional time to familiarize themselves with the bases for Callanan Claims and adequately assess their coverage positions.

22. STLCO and Callanan attended mediation on July 20, 2021.

23. All Defendant Insurers were advised of and attended the mediation.

24. As a result of the mediation, on July 30, 2021 STLCO finalized a settlement with Callanan whereby STLCO agreed to pay Callanan the amount of $6,625,000.00 in exchange for a complete release of all of Callanan's claims ("Callanan Settlement").

25. Defendant Insurers were at all times advised of the Callanan Settlement, but refused to make any payment on behalf of STLCO towards the Callanan Settlement, despite demand being made therefor.

26. All of the Defendant Insurers advised STLCO that their respective policies afforded no coverage for the Callanan Claims.

27. STLCO and Callanan subsequently fulfilled the terms of the Callanan Settlement, and STLCO issued payment in the amount of $6,625,000.00 to Callanan on or about August 6, 2021. ("Callanan Settlement").

28. STLCO thereafter demanded $4,635,000.00 from the Defendant Insurers collectively, representing the total amount of STLCO's obligation under the Callanan Settlement, less STLCO's $2,000,000.00 retainage.

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

29. In the aggregate, all of the insurance policies referenced above shall hereinafter be described collectively as the "Defendants' Policies".

30. All of the Defendants' Policies afford coverage to STLCO for an "Occurrence", that take place within the applicable policy coverage period, for either (or both) a "bodily injury" or a "personal injury". Further, all of the Defendants' Policies are injury-based, whereby coverage is triggered, not by the act that caused harm, but instead is invoked by the happening of an enumerated injury within the policy period. [*Ferguson v. St. Paul,* 597 S.W. 3d 249, 254 (Mo. App. W.D. 2019)]. Thus, in the factual setting described in this Petition, the Occurrences that the Callanan Claim complains about constitute covered harms and injuries that Mr. Callanan suffered each day that he was unlawfully incarcerated as a consequence of the alleged wrongful conviction in 1996 and his ensuant claimed unlawful imprisonment.

31. All of the Defendants Policies, including the Lexington Policy, contain Retained Limits provisions. The applicability of these provisions is a defense that the Defendant Insurers are obligated to plead and prove.

## <u>Count I – Breach of Contract Against Defendant Lexington</u>

32. STLCO restates the allegations in paragraphs 1 through 31, above.

33. Defendant Lexington issued five consecutive special excess liability policies of insurance to STLCO affording coverage for the policy periods of:

a) January 1, 1998 to January 1, 1999 (policy number 8898440, attached hereto as Exhibit A);

b) January 1, 1999 to January 1, 2000 (policy number 8539655, attached hereto as Exhibit B);

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

c) January 1, 2000 to January 1, 2001 (policy number 8539697, attached hereto as Exhibit C);

d) January 1, 2001 to January 1, 2002 (policy number 8539751, attached hereto as Exhibit D); and

e) December 31, 2001 to December 31, 2002 (policy number 8539795, attached hereto as Exhibit E) (collectively, the "Lexington Policies").

34. At all relevant times, the Lexington Policies were valid and enforceable insurance contracts by and between STLCO and Lexington, and STLCO has performed all of its obligations thereunder, including payment of necessary premiums.

35. Lexington Policies 8898440, 8539655, 8539697 and 8539751 provide that Lexington shall be liable for up to $10,000,000 for "any one Occurrence or Wrongful Act or series of continuous, repeated, or related Occurrences or Wrongful Acts in excess of the Insured's Retained limit, which was $1,000,000.00.

36. Lexington Policy 8539795 provides that Lexington shall be liable for up to $5,000,000 for "any one Occurrence or Wrongful Act or series of continuous, repeated, or related Occurrences or Wrongful Acts in excess of the Insured's Retained Limit", which was $2,000,000.00.

37. Under each Lexington Policy, "Occurrence" means:

(1) An accident or event, including injurious exposure to conditions which result during the policy period, in Bodily Injury or Property Damage, which is neither expected nor intended from the Insured's conduct;

(2) With respect to Personal Injury (except Bodily Injury), one or more offenses committed during the policy period.

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

38. Under each Lexington Policy, "Wrongful Act" means "any actual or alleged negligent act, error or omission arising out of the conduct of an Insured in the discharge of duties on behalf of the Named Insured during the Policy Period."

39. The acts and omissions made the subject of the Callanan Claims constitute occurrences or wrongful acts under the Lexington Policies, which provide coverage to STLCO for the loss suffered by STLCO as a result of the Callanan Claims.

40. In breach of the Lexington Policies identified above, Lexington has wrongfully refused to afford coverage to STLCO and indemnify STLCO for any portion of the payment STLCO made as a result of the Callanan Claims.

41. As a result of Lexington's breach of its obligation to STLCO under the Lexington Policies, STLCO has suffered damage in the amount of Lexington's pro-rated share of $4,635,000.00.

WHEREFORE, Plaintiff STLCO requests that this Court enter judgment in its favor and against Defendant Lexington, awarding STLCO damages in an amount to exceed Twenty-Five Thousand Dollars ($25,000.00), as well as prejudgment and post-judgment interest, attorneys' fees and costs.

**<u>Count II – Breach of Contract Against Defendant Insurance Company of the State of Pennsylvania</u>**

42. STLCO restates the allegations in paragraphs 1 through 41, above.

43. Defendant Insurance Company of the State of Pennsylvania issued nine excess liability insurance policies to STLCO affording coverage for the policy periods of:

a) December 31, 2002 to December 31, 2003 (policy number 47024081, attached hereto as Exhibit F);

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

b) January 1, 2004 to January 1, 2005, (policy number 47041170, attached hereto as Exhibit G);

c) January 1, 2005 to January 1, 2006(policy number 47052420, attached hereto as Exhibit H);

d) January 1, 2006 to January 1, 2007(policy number 47063384, attached hereto as Exhibit I);

e) January 1, 2007 to January 1, 2008(policy number 7235674, attached hereto as Exhibit J);

f) January 1, 2008 to January 1, 2009(policy number 6907903, attached hereto as Exhibit K);

g) January 1, 2009 to January 1, 2010(policy number 6907903, attached hereto as Exhibit L);

h) January 1, 2010 to January 1, 2011(policy number 6907968, attached hereto as Exhibit M); and

i) January 1, 2011 to January 1, 2012 (policy number 37723019, attached hereto as Exhibit N) (collectively, the "Pennsylvania Policies").

44. At all relevant times, the Pennsylvania Policies were valid and enforceable insurance contracts by and between STLCO and Pennsylvania, and STLCO has performed all of its obligations thereunder, including payment of necessary premiums.

45. The Pennsylvania Policies provide that Pennsylvania shall be liable for up to $5,000,000 for "Any one occurrence or wrongful act or employee benefit wrongful act or series of continuous, repeated, or related occurrences or wrongful acts or employee benefit wrongful acts."

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

46. Each of the Pennsylvania Policies was subject to a $2,000,000.00 retainage.

47. Under each Pennsylvania Policy, "Occurrence" means "an accident, including continuous, repeated, or related exposure to substantially the same general harmful conditions, which results in bodily injury or property damage neither expected or intended from your standpoint."

48. Under each Pennsylvania Policy, "Wrongful Act" means "Any actual or alleged error or misstatement, omission, negligent act, or breach of duty including misfeasance, malfeasance, and nonfeasance by you…."

49. Under each Pennsylvania Policy, "Wrongful Act" also includes "Personal Injury offenses", which includes "any-act, error, or omission constituted by…False arrest, detention or imprisonment".

50. The acts and omissions made the subject of the Callanan Claims constitute occurrences or wrongful acts under the Pennsylvania Policies, and the Pennsylvania Policies provide coverage to STLCO for the loss suffered by STLCO as a result of the Callanan Claims.

51. In breach of the Pennsylvania Policies identified above, Pennsylvania has wrongfully refused to afford coverage to STLCO and indemnify STLCO for any portion of the payment STLCO made as a result of the Callanan Claims.

52. As a result of Pennsylvania's breach of its obligation to STLCO under the Pennsylvania Policies, STLCO has suffered damage in the amount of Pennsylvania's pro-rated share of $4,635,000.00.

WHEREFORE, Plaintiff STLCO requests that this Court enter judgment in its favor and against Defendant Pennsylvania, awarding STLCO damages in an amount to exceed Twenty-

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

Five Thousand Dollars ($25,000.00), as well as prejudgment and post-judgment interest, attorneys' fees and costs.

**Count III – Breach of Contract Against Defendant Starr**

53. STLCO restates the allegations in paragraphs 1 through 52, above.

54. Defendant Starr issued four Special Excess Liability policies of insurance to STLCO affording coverage for the policy periods of:

a) January 1, 2012 to January 1, 2013 (policy number SISCPEL00014712, attached hereto as Exhibit O);

b) January 1, 2013 to January 1, 2014 (policy number SISCPEL00014713, attached hereto as Exhibit P);

c) January 1, 2014 to January 1, 2015 (policy number 1000005157, attached hereto as Exhibit Q); and

d) January 1, 2015 to January 1, 2016 (policy number 10000051340, attached hereto as Exhibit R) (collectively the "Starr Policies").

55. At all relevant times, the Starr Policies were valid and enforceable insurance contracts by and between STLCO and Starr, and STLCO has performed all of its obligations thereunder, including payment of necessary premiums.

56. The Starr Policies provide that Starr shall be liable for up to $5,000,000 (for policy SISCPEL00014712) or $10,000,000 (for all other Starr Policies) for "Any one occurrence, wrongful act or employee benefit wrongful act or series of continuous, repeated, or related occurrences, wrongful acts or employee benefit wrongful acts in excess of your retained limit."

57. Ender each Starr Policy, the retained limit was $2,000,000.

58. Under each Starr Policy, "Occurrence" means:

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

1. Bodily injury or property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one occurrence.

2. Personal and advertising Injury, an offense arising out of your business that causes personal and advertising injury. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one occurrence, regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

59. Under each Starr Policy, "Wrongful Act" means "Any actual or alleged error or misstatement, omission, negligent act, or breach of duty including misfeasance, malfeasance, and nonfeasance by you…"

60. The acts and omissions made the subject of the Callanan Claims constitute occurrences or wrongful acts under the Starr Policies, and the Starr Policies provide coverage to STLCO for the loss suffered by STLCO as a result of the Callanan Claims.

62. In breach of the Starr Policies identified above, Starr has wrongfully refused to afford coverage to STLCO and indemnify STLCO for any portion of the payment STLCO made as a result of the Callanan Claims.

63. As a result of Starr's breach of its obligation to STLCO under the Starr Policies, STLCO has suffered damage in the amount of Starr's pro-rated share of $4,635,000.00.

WHEREFORE, Plaintiff STLCO requests that this Court enter judgment in its favor and against Defendant Starr, awarding STLCO damages in an amount to exceed Twenty-Five Thousand Dollars ($25,000.00), as well as prejudgment and post-judgment interest, attorneys' fees and costs.

**Count IV – Breach of Contract Against Defendant Scottsdale**

64. STLCO restates the allegations in paragraphs 1 through 63, above.

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

65. Defendant Scottsdale issued STLCO a policy of commercial insurance to STLCO with coverage from January 1, 2016 to January 1, 2017 (policy number PGS0000008, attached hereto as Exhibit S) (the "Scottsdale Policy")

66. At all relevant times, the Scottsdale Policy was a valid and enforceable insurance contract by and between STLCO and Pennsylvania, and STLCO has performed all of its obligations thereunder, including payment of necessary premiums.

67. The Scottsdale Policy provides that Scottsdale shall be liable for up to $10,000,000 for "Any one Occurrence, Wrongful Act or Employee Benefit Wrongful Act in excess of your Retained Limit."

68. Under the Scottsdale Policy, the Retained Limit was $2,000,000.

69. Under the Scottsdale Policy, "Occurrence" means:

> 1. With respect to bodily injury and property damage, any accident, including continuous or repeated exposure to substantially the same general harmful conditions; provided, that all such exposure to substantially the same general harmful conditions will be deemed to arise out of one bodily injury or property damage occurrence; and
>
> 2. With respect to personal and advertising Injury, an offense arising out of your activities that cause personal and advertising injury; provided, that all damages arising from the same, related or repeated injurious material or act will be deemed to arise out of one personal and advertising Injury occurrence, regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

70. Under the Scottsdale Policy, "Wrongful Act" means "means any actual or alleged error or misstatement, omission, negligent act, or breach of duty including misfeasance, malfeasance, and nonfeasance by you…."

71. The acts and omissions made the subject of the Callanan Claims constitute occurrences or wrongful acts under the Scottsdale Policy, and the Scottsdale Policy provides coverage to STLCO for the loss suffered by STLCO as a result of the Callanan Claims.

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

72. In breach of the Scottsdale Policy identified above, Scottsdale has wrongfully refused to afford coverage to STLCO and indemnify STLCO for any portion of the payment STLCO made as a result of the Callanan Claims.

73. As a result of Scottsdale's breach of its obligation to STLCO under the Scottsdale Policies, STLCO has suffered damage in the amount of Scottsdale's pro-rated share of $4,635,000.00.

WHEREFORE, Plaintiff STLCO requests that this Court enter judgment in its favor and against Defendant Scottsdale, awarding STLCO damages in an amount to exceed Twenty-Five Thousand Dollars ($25,000.00), as well as prejudgment and post-judgment interest, attorneys' fees and costs.

**<u>Count V – Breach of Contract Against Defendant Allied World</u>**

74. STLCO restates the allegations in paragraphs 1 through 73, above.

75. Defendant Allied World issued STLCO three policies of insurance affording coverage for the policy periods of:

a) January 1, 2017 to March 1, 2018 (policy number 5110-0069-00, attached hereto as Exhibit T and policy number 5111-0083-00, attached as Exhibit U);

b) March 1, 2018 to June 1, 2019 (policy number 5110-0069-01, attached hereto as Exhibit V, and policy number 5111-0083-01, attached as Exhibit W);

c) June 1, 2019 to January 1, 2020 (policy number 5110-0069-02, attached hereto as Exhibit X and policy number 5111-0083-02, attached as Exhibit Y);

(Collectively the "Allied World Policies").

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

76. At all relevant times, the Allied World Policies were valid and enforceable insurance contracts by and between STLCO and Allied World, and STLCO has performed all of its obligations thereunder, including payment of necessary premiums.

77. The Allied World Policies provide that Allied World shall be liable for up to $10,000,000 for occurrences of "Public Official's Wrongful Acts".

78. Under each Allied World Policy, the retained limit was $2,000,000.

79. Under each Allied World Policy, "Occurrence" means an event, including continuous or repeated exposure to substantially the same generally harmful conditions.

80. Under each Allied World Policy, "Public Official's Wrongful Act" means any actual or alleged: a. Error or omission, neglect or breach of duty by an insured; b. Violation of civil rights protected under 42 USC 1981 et sequential; or c. Violation of any state civil rights law.

81. The acts and omissions made the subject of the Callanan Claims constitute occurrences or wrongful acts under the Allied World Policies, and the Allied World Policies provide coverage to STLCO for the loss suffered by STLCO as a result of the Callanan Claims.

82. In breach of the Allied World Policies identified above, Allied World has wrongfully refused to afford coverage to STLCO and indemnify STLCO for any portion of the payment STLCO made as a result of the Callanan Claims.

83. As a result of Allied World's breach of its obligation to STLCO under the Allied World Policies, STLCO has suffered damage in the amount of Allied World's pro-rated share of $4,635,000.00.

WHEREFORE, Plaintiff STLCO requests that this Court enter judgment in its favor and against Defendant Allied World, awarding STLCO damages in an amount to exceed Twenty-

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

Five Thousand Dollars ($25,000.00), as well as prejudgment and post-judgment interest, attorneys' fees and costs.

**Count VI – Breach of Contract Against Defendant Vantapro**

84. STLCO restates the allegations in paragraphs 1 through 83, above.

85. Defendant Vantapro issued a policy of insurance to STLCO for the policy period of January 1, 2020 through January 1, 2021 (policy number 5515-0010-00, attached hereto as Exhibit Z) (the "Vantapro Policy").

86. At all relevant times, the Vantapro Policy was a valid and enforceable insurance contract by and between STLCO and Vantapro, and STLCO has performed all of its obligations thereunder, including payment of necessary premiums.

87. The Vantapro Policy provides that Vantapro shall be liable for up to $10,000,000 for, among other things:

a) those sums in excess of the retained limit that the Insured becomes legally obligated to pay for loss because of bodily injury, property damage, personal injury, or advertising injury caused by an occurrence or an employee benefits wrongful act to which this insurance applies and which takes place in the coverage territory during the policy period.

b) those sums in excess of the retained limit that the insured becomes legally obligated to pay for loss arising out of a law enforcement wrongful act committed in the course and scope of your law enforcement activities to which this insurance applies and which takes place in the coverage territory during the policy period.

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

c) those sums in excess of the retained limit that the Insured becomes legally obligated to pay for loss arising out of a public officials wrongful act to which this insurance applies and which takes place in the coverage territory during the policy period.

88. Under the Vantapro Policy, the retained limit was $2,000,000.

89. Under the Vantapro Policy, "Public officials wrongful act" means "an actual or alleged Breach of duty by an Insured, neglect, error, misstatement, misleading statement or omission by an Insured; or Violation of civil rights protected under 42 USC 1981 et seq., or any similar federal, state, or local law by an Insured; or Violation of any state civil rights law that arises out of the discharge of duties for the Named Insured."

90. Under the Vantapro Policy, "Law enforcement wrongful act" means "any actual or alleged act, error or omission, neglect or breach of duty, including violation of civil rights law, that results in bodily injury, property damage or personal injury that is committed by an Insured in the course and scope of conducting law enforcement activities for the Named Insured."

91. The acts and omissions made the subject of the Callanan Claims constitute occurrences or wrongful acts under the Vantapro Policy, and the Vantapro Policy provides coverage to STLCO for the loss suffered by STLCO as a result of the Callanan Claims.

92. In breach of the Vantapro Policy, Vantapro has wrongfully refused to afford coverage to STLCO and indemnify STLCO for any portion of the payment STLCO made as a result of the Callanan Claims.

93. As a result of s breach of its obligation to STLCO under the Vantapro Policy, STLCO has suffered damage in the amount of Vantapro's pro-rated share of $4,635,000.00.

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

WHEREFORE, Plaintiff STLCO requests that this Court enter judgment in its favor and against Defendant Vantapro, awarding STLCO damages in an amount to exceed Twenty-Five Thousand Dollars ($25,000.00), as well as prejudgment and post-judgment interest, attorneys' fees and costs.

**Count VII – Breach of Contract Against Defendant Gemini**

94. STLCO restates the allegations in paragraphs 1 through 93, above.

95. Defendant Gemini issued a policy of insurance to STLCO for the policy period of January 1, 2021 through January 1, 2022 (policy number PEM0000205-00, attached hereto as Exhibit AA) (the "Gemini Policy").

96. At all relevant times, the Gemini Policy was a valid and enforceable insurance contract by and between STLCO and Gemini, and STLCO has performed all of its obligations thereunder, including payment of necessary premiums.

97. The Gemini Policy provides that Gemini shall be liable for up to $5,000,000 for, among other things, expenses incurred by STLCO in excess of its retained limits as the result of an "occurrence".

98. Under the Gemini Policy, the retained limit was $2,000,000.

99. Under the Gemini Policy, an "occurrence" includes "personal injury," defined to include "false arrest, false imprisonment, wrongful detention or malicious prosecution."

100. The acts and omissions made the subject of the Callanan Claims constitute occurrences or wrongful acts under the Gemini Policy, and the Gemini Policy provides coverage to STLCO for the loss suffered by STLCO as a result of the Callanan Claims.

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

101. In breach of the Gemini Policy, Gemini has wrongfully refused to afford coverage to STLCO and indemnify STLCO for any portion of the payment STLCO made as a result of the Callanan Claims.

102. As a result of Gemini's breach of its obligation to STLCO under the Gemini Policy, STLCO has suffered damage in the amount of Gemini's pro-rated share of $4,635,000.00.

WHEREFORE, Plaintiff STLCO requests that this Court enter judgment in its favor and against Defendant Gemini, awarding STLCO damages in an amount to exceed Twenty-Five Thousand Dollars ($25,000.00), as well as prejudgment and post-judgment interest, attorneys' fees and costs

**Count VIII – Declaratory Judgment As to All Parties Concerning Allocation Of Damages Against All Defendants**

103. STLCO restates the allegations in paragraphs 1 through 102, above.

104. STLCO made its payment of the Callanan Claim to, in part, obtain Mr. Callanan's release of his cause of action against the County with respect to the injuries Callanan was alleged to have suffered every day during a period of time exceeding twenty-four years, from 1996 to at least May of 2020.

105. Callanan's injuries, and the consequent damages sought by Callanan from STLCO, constitute serial, daily injuries that Mr. Callanan claims he endured spanning a period of time within which all Defendants provided coverage with respect to the Callanan Claim under the multiple policies described above.

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM

106. Due to the "continuous damage over a long period of time and [the involvement of] multiple policies … in effect during [thus] period of time"[1] this Court should apply a pro-rata methodology to appropriate STLCO's damages as between the Defendants "proportionately across the entire period" of time Callanan alleges he was suffering the injuries and harms comprising the Callanan Claim.[2]

WHEREFORE, Plaintiff STLCO requests that this Court enter judgment in its favor and declare that each of the Insurer defendants awarding STLCO damages in an amount to exceed Twenty-Five Thousand Dollars ($25,000.00), as well as prejudgment and post-judgment interest, attorneys' fees and costs.

**EDWARDS LAWS, LLC**

/s/ Jimmie M. Edwards
Jimmie M. Edwards - #31010
749 Fairfield Lake Drive
Chesterfield, Missouri 63017
(314) 799-7300
e@je-laws.com

**KISTNER, HAMILTON, ELAM & MARTIN, LLC**

By: /s/ Elkin L. Kistner
Elkin L. Kistner #35287
Sean M. Elam #56112
William E. Kistner #70540
1406 North Broadway
St. Louis, MO 63102
Telephone: (314) 783-9798
Facsimile: (314) 944-0950
E-mail: elkinkis@law-fort.com
E-Mail: smelam@law-fort.com
E-mail: bill@law-fort.com
*Attorneys for Plaintiffs St. Louis County*

[1] *Northrup Grumman v. Employers Inc.*, 612 S.W.3d 1, 8 (Mo. App. E.D. 2020).
[2] *Nooter Corp. v. Allianz,* 536 S.W.3d 251, 264 (Mo. App. E.D. 2017).

Electronically Filed - St Louis County - June 16, 2026 - 12:52 PM